# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| MARK JEROME JOHNSON BLOUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 6:23-cv-03106-MDH |
| | ) |
| UNITED STATES OF AMERICA, MERRICK GARLAND, Attorney General of the United States, in his OFFICIAL and INDIVIDUAL capacities; THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, an agency of the United States of America; and BERNARD G. HANSEN, Special Agent in Charge of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Kansas City Field Division, in his OFFICIAL and INDIVIDUAL capacities, | ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS UNITED STATES OF AMERICA, THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, MERRICK GARLAND IN HIS OFFICIAL CAPACITY AND BERNARD G. HANSEN IN HIS OFFICIAL CAPACITY'S SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

Defendants the United States of America, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Merrick Garland—in his official capacity as Attorney General of the United States—and Bernard G. Hansen—in his official capacity as Special Agent in Charge of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Kansas City Field Division—(hereinafter, "federal defendants"), hereby move to dismiss pro se Plaintiff Mark Jerome Johnson Blount's complaint, ECF No. 1. Plaintiff seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the National Firearms Act, 26 U.S.C. Ch. 53, the Gun Control Act of 1968, 18 U.S.C. § 922,

and the Firearms Owners' Protection Act of 1986, 18 U.S.C. Chs. 40, 44 (hereinafter, "federal firearms acts") are unconstitutional as applied to Plaintiff. Plaintiff's 491-paragraph complaint contains only one factual allegation relevant to his claim—that Plaintiff "plans to purchase an M-16 rifle, M-4 rifle, Squad Automatic Weapon (SAW) or other machine gun[1] . . . or . . . convert[] the AR-15 rifles that he already lawfully possesses to automatic weapons . . . and possess said weapons . . . in the immediate future." Compl. ¶ 24, ECF No. 1. The remainder of the Complaint argues that the federal firearms acts are unconstitutional as applied to Plaintiff because Plaintiff is a member of what he calls "the Posterity," *e.g.*, Compl. ¶ 309, which he defines as "the direct lineal bloodline descendants of the Founding Generation" of the United States, Compl. ¶ 308. As a member of "the Posterity," Plaintiff argues that he enjoys an ancestral right to keep and bear arms, *e.g.*, Compl. ¶ 454, which the "Founding Generation" did not have the power to regulate, *e.g.*, Compl. ¶ 455. It follows from Plaintiff's argument that—because the "Founding Generation" did not have the power to regulate Plaintiff's ancestors' right to keep and bear arms—Congress today lacks the power to regulate Plaintiff's right. *E.g.*, Compl. ¶¶ 459–61. The Court should dismiss the Complaint as to the federal defendants for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.

### **Decisional Standard under Fed. R. Civ. P. 12(b)(1)**

The applicable decisional standard when determining a Rule 12(b)(1) motion depends upon whether the movant makes a "facial" or a "factual[2]" challenge to subject matter jurisdiction.

---

[1] The term "machinegun" is defined in 26 U.S.C. § 5845(b) to include "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." *See also* 18 U.S.C. § 921(a)(24) (incorporating this definition of machinegun into Gun Control Act).

[2] In a factual challenge, the movant relies on materials outside of the pleadings to contest subject matter jurisdiction. *Osborn v. United States*, 918 F.2d at 729 n.6; *see also McClain v. American Economy Insurance Co.*, 424 F.3d 728, 734 (8th Cir. 2005). *See also Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 861 (8th Cir. 2013) (raising a factual challenge to the plaintiff's standing to sue). In such cases, the court may rely on matters beyond the pleadings without turning the 12(b)(1) motion into a Rule 56 summary judgment motion, and the nonmoving party does not enjoy Rule

*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge, the movant argues that the allegations in the complaint are not sufficient to establish subject matter jurisdiction. *Id.* In such cases, the court must afford the plaintiff the same protections as he would be entitled to receive under Rule 12(b)(6), *id.*, i.e., the court must accept all factual allegations in the complaint as true, draw all inferences in the plaintiff's favor, and grant the motion to dismiss only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *see also Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). This motion to dismiss asserts a facial challenge to the Court's subject matter jurisdiction.

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must view the allegations in the complaint liberally and in the light most favorable to the plaintiff. *Eckert*, 514 F.3d at 806. Additionally, the court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). To survive a 12(b)(6) motion to dismiss, a complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). It must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

---

12(b)(6)'s safeguards. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Osborn*, 918 F.2d at 729 n.6.

**Discussion**

For the reasons stated below, the federal defendants request that the Court dismiss Plaintiff's complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. As it is a threshold issue, the federal defendants' suggestions regarding subject matter jurisdiction are stated first below.

**I.     The Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction.**

To invoke the Court's jurisdiction to decide a matter, a plaintiff must have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). This requires a plaintiff to establish— "to the manner and degree of evidence required" at each successive stage of litigation—1) an "injury-in-fact," 2) "a causal connection between the injury and the conduct complained of," and 3) that the Court is likely able to redress the plaintiff's injury. *Id.* at 560–61. In order to establish an injury-in-fact at the pleading stage, a plaintiff bears the burden to plead facts showing a "concrete and particularized" "actual or imminent"—as opposed to a "conjectural or hypothetical"—"invasion of a legally protected interest." *Id.* at 560. The standing inquiry is "especially rigorous where reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997)).

Plaintiff's complaint contains a single factual allegation relevant to this complaint: "Plaintiff plans on purchasing an M-16 rifle, M-4 rifle, Squad Automatic Weapon (SAW), or other machine gun . . . manufactured after 1987 . . . or converting the AR-15 rifles that he already lawfully possesses to automatic weapons . . . in the immediate future."

18 U.S.C. § 922(o) makes it illegal "for any person to transfer or possess a machinegun," unless the machinegun is possessed under the authority of a government or was lawfully possessed

4

prior to May 19, 1986—the date § 922(o) took effect. *See* 18 U.S.C. § 922(o)(2). The National Firearms Act requires machineguns to be registered with ATF, and provides that applications to register a firearm "shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." 26 U.S.C. § 5812(a); *see also id.* § 5861(d) (prohibiting possession of a firearm that is regulated by the National Firearms Act and is "not registered" to the possessor).

Regarding Plaintiff's claim seeking a declaratory judgment that restrictions on machinegun possession in § 922(o) and the National Firearms Act are unconstitutional and an injunction on their enforcement against him, Plaintiff has failed to plead an imminent concrete and particularized injury. A Plaintiff "contesting the constitutionality of a criminal statute" need not "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). A plaintiff in a pre-enforcement constitutional challenge to a criminal statute may establish an injury-in-fact by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and demonstrating that there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt*, 442 U.S. at 298). However, where "plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. at 298–99 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). "[P]ersons having no fears of . . . prosecution except those that are imaginary or speculative, are not to be accepted as

5

appropriate plaintiffs in such cases." *Younger*, 401 U.S. at 42 (1971); *see also St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006).

Plaintiff merely alleges a general intent to violate § 922(o) by purchasing a machinegun or converting a semi-automatic AR-15 into a machinegun. Compl. ¶ 24. Plaintiff thus fails to allege anything beyond a speculative fear of prosecution. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of [] 'actual or imminent' injury . . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564, 112 S. Ct. 2130, 2138, 119 L. Ed. 2d 351 (1992); *see also Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (Plaintiffs' assertions that they 'wish' or 'intend' to engage in proscribed conduct is not sufficient to establish an injury-in-fact under Article III." (quoting *Lujan*, 504 U.S. at 564)). Without more, Plaintiff's complaint is merely a "generalized grievance" on an issue of "wide public significance," namely the existence of § 922(o). *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75 (1982); *see also Lujan*, 504 U.S. at 573–74. Plaintiff's remedy, therefore, lies in the political branches, not in the judiciary. *Id.* "Just because [Plaintiff] does not like the firearms regulation does not give him standing to complain about its legality." *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996). Because Plaintiff has not alleged any prior violations of § 922(o) or any concrete plan to violate section § 922(o), he has made no factual allegations showing a credible threat of prosecution. *E.g.*, *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1104–05 (C.D. Cal. 2013) (finding standing where plaintiff alleged that he had previously violated California's ban on carrying a loaded firearm in public and intended to continue carrying loaded firearm in public); *Kegler v. U.S. Dep't of Just.*, 436 F. Supp. 2d 1204, 1218–19 (D. Wyo. 2006) (finding no standing where Plaintiff alleged an intent to purchase firearm "at some imprecise point in the indefinite

future" in violation of 18 U.S.C. § 922(g)(9), had made no prior attempt to purchase firearm, and did not allege any criminal investigations, arrests, or prosecutions against him).

Indeed, just last month, a district court in Wyoming dismissed a Second Amendment challenge to § 922(o) because the plaintiff had failed to allege a sufficiently concrete intention to acquire a machinegun. *See DeWilde v. United States*, No. 1:23-cv-00003-SWS, 2023 WL 4884582 (D. Wyo. July 17, 2023). The court concluded that the plaintiff lacked standing because he "merely expresse[d] a desire to own an M16 machinegun." *Id.* at *4. The plaintiff "[did] not plead any facts regarding when or how he plans to own such a gun nor allege any fear or likelihood of investigation, arrest, or prosecution." *Id.* The plaintiff did not allege "past or present ownership" of a firearm prohibited by federal law, any "attempt to purchase" such a firearm, "much less a failed transaction," or "that a firearm ha[d] been confiscated by the ATF." *Id.* at *4 (quoting *Kegler*, 436 F. Supp. 2d at 1219). The same is true here. As such, Plaintiff's Complaint should be dismissed for lack of standing.

II. **Alternatively, the Court should dismiss Plaintiff's Complaint for failure to state a claim as machinegun ownership is not protected by the Second Amendment.**

Under Supreme Court precedent, machineguns are in the category of weapons that can be restricted, or even banned, because they are dangerous and unusual weapons beyond the scope of the Second Amendment. In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court limited the types of weapons protected by the Second Amendment. *Miller* held that the NFA's registration requirements for short-barreled shotguns did not violate the Second Amendment, reasoning that "[i]n the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." *Miller*, 307 U.S.

at 178. The Court further explained that in the founding era, men engaged in militia service "were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Id.* at 179.

The Court next addressed the Second Amendment in detail in *District of Columbia v. Heller*, 554 U.S. 570 (2008), explaining that the Second Amendment protected the right to keep and bear weapons in common use, but not dangerous and unusual weapons. *Heller* held that "the Second Amendment conferred an individual right to keep and bear arms," but acknowledged that "the right was not unlimited[.]" *Heller*, 554 U.S. at 595. In articulating the limits of the Second Amendment right, the Court explained the significance of its holding in *Miller*. *Heller* rejected a reading of *Miller* that the Second Amendment protected weapons "useful in warfare," noting that this reading would lead to the "startling" result that "the National Firearms Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." *Id.* at 624. The Court thus found it so clear that the NFA's regulations on machineguns were constitutional that it curtly dismissed the contrary notion as "startling." *Heller* explained that "*Miller* stands . . . for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Id.* at 623. Specifically, the Second Amendment protects "arms 'in common use at the time' for lawful purposes like self-defense," *id.* at 624 (quoting *Miller*, 307 U.S. at 179), a "limitation . . . fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" *id.* at 627 (quoting William Blackstone, 4 Commentaries on the Laws of England 148-49 (1769)).

The *Heller* Court considered the potential "object[ion]" to its reasoning "that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause" concerning the necessity of a

8

Case 6:23-cv-03106-MDH   Document 10   Filed 08/11/23   Page 8 of 14

well-regulated militia. *Id.* But the Court rebuffed this objection, explaining that "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." *Id.* The Court thus found it implicit and obvious that under its reading of the Second Amendment, "M-16 rifles and the like . . . may be banned[.]" *Id.* As the Fifth Circuit explained, "*Heller* took it as a given that M-16s are dangerous and unusual weapons and not protected by the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016); see also *United States v. Dixon*, 2023 WL 2664076, at *3 (N.D. Ill. March 28, 2023) (in *Heller*, "[t]he Court took from *Miller* the rule that the Second Amendment does not authorize private persons to possess weapons such as machine guns and sawed-off shotguns that the government would not expect (or allow) citizens to bring with them when the militia is called to service") (quoting *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015)).

In *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), the Supreme Court held that under the Fourteenth Amendment, the Second Amendment right to bear arms applied not only against the federal government but also against the states. A plurality also "repeat[ed]" the "assurances" from Heller about the limitations on the Second Amendment right, including that "the right to keep and bear arms is not a right to keep and carry any weapon whatsoever." 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626) (plurality opinion).

Finally, last year in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Court reaffirmed its analysis of the Second Amendment in *Heller*, including *Heller*'s conclusions about the limits of the types of weapons protected by the Second Amendment. *Bruen* held that "the Second and Fourteenth Amendments protect an individual's right to carry a

9

handgun for self-defense outside the home." *Id.* at 2122. In so holding, *Bruen* articulated the standard for Second Amendment challenges:

> we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126.

The *Bruen* Court stated that it was clarifying, rather than abrogating, *Heller*'s analysis, explaining that its articulation of the governing standard was "[i]n keeping with *Heller*." *Id.* *Bruen* noted that *Heller* "relied on the historical understanding of the [Second] Amendment to demark the limits on the exercise of that right." *Id.* at 2128. Specifically, the Court found it "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' that the Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *Id.* (quoting *Heller*, 554 U.S. at 627).

In sum, "*Heller* and *Bruen* both reaffirmed *Miller*'s holding" that "the Second Amendment does not protect the right to own a 'dangerous and unusual' weapon, such as a machine gun." *Dixon*, 2023 WL 2664076, at *2. The Second Amendment protects weapons "in common use . . . for lawful purposes like self-defense," but does not protect "dangerous and unusual weapons." *Heller*, 554 U.S. at 624, 627. The Supreme Court has further listed machineguns, and specifically the M-16 rifle, as paradigmatic examples of the type of unprotected dangerous and unusual weapons, finding it implicit that "M-16 rifles and the like[] may be banned." *Id.* at 627. And the Supreme Court's recent clarification of the Second Amendment's scope stated that it was "[i]n keeping with *Heller*" and approvingly cited *Heller*'s discussion of the limitation of the Second

10

Amendment to weapons in common use that are not dangerous and unusual. *Bruen*, 142 S. Ct. at 2126, 2128. "Thus, *Miller*, *Heller*, and *Bruen* foreclose any challenge to the federal machinegun ban." *Dixon*, 2023 WL 2664076, at *3.

In addition, since *Heller*, the 8th Circuit has affirmed that the possession of machineguns by private citizens is not protected by the Second Amendment. *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Accordingly, under *Heller*, [defendant's] possession of the guns is not protected by the Second Amendment. Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use."); *see also United States v. Allen*, 630 F.3d 762, 766 (8th Cir. 2011) (adhering to *Fincher*'s holding that "the Second Amendment does not protect an individual's right to possess a machine gun"). Multiple other appellate courts have concluded the same. *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 141 (3d Cir. 2016); *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012); *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009). Since *Bruen*, the Eighth Circuit has concluded that it "remain[s] bound" by Second Amendment case law from the Eighth Circuit decided after *Heller* and before *Bruen*, so long as the caselaw holds that conduct at issue is not protected by the text of the Second Amendment. *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023) (concluding that it remained bound by *United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011), which upheld 18 U.S.C. § 922(g)(5)(A)'s prohibition on firearms possession by noncitizens unlawfully present in the United States, on the basis that such individuals were not part of the people protected by the text of the Second Amendment). Because *Fincher* and *Allen* are based on the conclusion that

11

machinegun possession is not protected by the text of the Second Amendment, rather than application of the sort of means-end scrutiny that *Bruen* rejected, *Fincher* and *Allen* remain binding precedent. *See also United States v. Kittson*, No. 3:21-cr-00075-IM, 2023 WL 5015812, at *3 (D. Or. Aug. 7, 2023) (concluding that pre-*Bruen* Ninth Circuit precedent upholding § 922(o) remained binding after *Bruen*). At the very least, the uniform appellate case law holding that the Second Amendment does not confer a right to possess machineguns remains highly persuasive authority.

In addition, since *Bruen* came down last year, every court to address § 922(o) has upheld the restriction on machineguns. *See Dixon*, 2023 WL 2664076, at *3 (denying motion to dismiss indictment under § 922(o) and holding that "[t]he Second Amendment simply does not extend to 'dangerous and unusual weapons,'" such as machineguns); *United States v. Simien*, No. SA-22-cr-00379-JKP, 2023 WL 1980487, at *9 (W.D. Tex. Feb. 10, 2023) (holding that § 922(o) is "constitutional under the Second Amendment" because "machineguns are within the category of 'dangerous and unusual' weapons that do not receive Second Amendment protection"); Order, *United States v. Adamiak*, Case 2:22-cr-00047-AWA-LRL, ECF No. 46, at 9-10 (E.D. Va. Sept. 22, 2022) ("strongly disagree[ing]" with argument against constitutionality of § 922(o) and holding that "machineguns . . . are not weapons 'in common use' and thus fall outside the Second Amendment's protection"); *United States v. Hoover*, 635 F. Supp. 3d 1305, 1321 (M.D. Fla. 2022); *DeWilde v. United States*, No. 1:23-CV-00003-SWS, 2023 WL 4884582, at *8 (D. Wyo. July 17, 2023) ("Plaintiff's claim challenging the constitutionality of § 922(o) is foreclosed by *Miller*, *Heller*, and *Bruen*. The Second Amendment does not extend to 'dangerous and unusual weapons' such as machineguns." (internal citation omitted)); *United States v. Kittson*, No. 3:21-cr-00075-IM, 2023 WL 5015812, at *3 (D. Or. Aug. 7, 2023) ("Following *Bruen*, this Court finds that

machineguns remain unprotected by the Second Amendment."); *Cox v. United States*, No. CR11-00022RJB, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023) ("[m]achine guns are not protected "arms" under the Second Amendment because they are both 'dangerous and unusual'"); *United States v. Kazmende*, No. 1:22-CR-236-SDG-CCB, 2023 WL 3872209, at *2 (N.D. Ga. May 17, 2023) ("Because machineguns are dangerous and unusual weapons that are outside the protection of the Second Amendment, Section 922(o) is not unconstitutional."), *report and recommendation adopted*, 2023 WL 3867792 (N.D. Ga. June 7, 2023).

Because machine guns are dangerous and unusual weapons not in common use, the Second Amendment does not protect the right to ownership thereof. The federal defendants therefore request the Court dismiss Plaintiff's complaint for failure to state a claim.

## Conclusion

For the foregoing reason, the federal defendants respectfully request Plaintiff's Complaint be dismissed.

        Respectfully submitted,

        Teresa A. Moore
        United States Attorney

By:    */s/ Wyatt R. Nelson*
        Wyatt R. Nelson
        Assistant United States Attorney
        Missouri Bar No. 72944
        901 St. Louis Street, Suite 500
        Springfield, MO 65806
        Telephone: (417) 831-4406
        Facsimile: (417) 831-0078
        ATTORNEY FOR DEFENDANTS
        UNITED STATES OF AMERICA,
        BUREAU OF ALCOHOL, TOBACCO,
        FIREARMS, AND EXPLOSIVES,
        MERRICK GARLAND, in his official capacity,
        *and* BERNARD G. HANSEN, in his official capacity
        Wyatt.Nelson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of August 2023, a true and correct copy of the foregoing document was filed with the Court using the Court's CM/ECF system and was served upon each attorney of record via ECF notification and/or via first class mail to the address indicated below.

Mark Jerome Johnson Blount
664 N. Montego St.
Nixa, MO 65714

*/s/ Wyatt R. Nelson*
_____
Wyatt R. Nelson
Assistant United States Attorney