**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| MARK JEROME JOHNSON BLOUNT,   ( | |
|                        ( | |
|      Plaintiff,           ( | |
| v.                         ( | |
|                        ( | |
| THE UNITED STATES OF AMERICA;  ( | CIVIL ACTION NO: 6:23-CV-3106-MDH |
| MERRICK GARLAND, Attorney General of ( | |
| the United States, in his OFFICIAL and  ( | |
| INDIVIDUAL capacities; THE BUREAU OF ( | |
| ALCOHOL, TOBACCO, FIREARMS AND ( | |
| EXPLOSIVES, an agency of the United States ( | |
| of America; and BERNARD G. HANSEN, ( | |
| Special Agent in Charge of the Bureau of  ( | |
| Alcohol, Tobacco, Firearms and Explosives, ( | |
| Kansas City Field Division, in his OFFICIAL ( | |
| and INDIVIDUAL capacities,        ( | **ORAL ARGUMENT REQUEST** |
|      Defendants.         ( | |

SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW, Plaintiff, Mark Jerome Johnson Blount, Gentlemen-Esquire, and files

these SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,

incorporating all claims and statements of law contained in his verified complaint by reference

herein, showing the Court as follows:

INTRODUCTION

Plaintiff is a law-abiding citizen and a member of the Posterity, "[t]he race that proceeds

from a progenitor; offspring to the furthest generation; ***the aggregate number of persons who***

***are <u>descended</u> from an ancestor <u>or a generation</u>***; - contrasted with ancestry,"[1] the lineal, legal,

and bloodline descendants of the Founding Generation, the original Sovereign Body of this

country, who secured this country's independence, imbued this country and their governments

---

[1] Noah Webster, Webster's Complete Dictionary of the English Language 1017
(Chauncey A. Goodrich et al. ed., New Edition of 1880, 1886) (emphasis added).

with the sovereign power of which those governments are possessed, "retained"[2] all that sovereign power not so expressly delegated to their governments through express enumerations in those governments' constitutions, and, who retained, even assuming for arguendo that they were possessed of the joint-sovereign power to act upon their ancient, fundamental, ancestral rights, which they were not, as a successor sovereign can possess no more rights or power than his predecessor in interest, all that sovereign power which they possessed in their individual capacities in the form of their fundamental, ancestral rights, from all governmental action, "for ourselves and our Posterity,"[3] evidencing said retention by enshrining said "pre-existing rights," [4] which they had "'inherited from [their] English ancestors,'"[5] in the Bill of Rights to the United States Constitution, though such enumeration of rights was unnecessary, as not only are these rights beyond the sovereign powers of the Sovereign Body of this country to act upon or regulate in the slightest degree, but, also "[c]ongress was given no power to abridge the[se] ancient right[s] of individuals,"[6] these rights "not…[being] granted by the Constitution. Neither [are they] in any manner dependent upon that instrument for [their] existence."[7] The Founding Generation passed these ancient, fundamental, absolute, ancestral rights to their Posterity, their lineal, legal, and bloodline descendants, one of whom is Plaintiff, who possess these absolute ancestral rights at present by virtue of their descent from the ancestral class of rights-holders, as all rights, status, and power pass through the blood from antecedent rights-holder to their Posterity.

---

[2] U.S. Const. amend. IX.
[3] U.S. Const. Preamble.
[4] New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2127 (2022).
[5] Id.
[6] District of Columbia et al. v. Heller, 554 U.S. 570, 599 (2008).
[7] United States v. Cruikshank, 92 U.S. 542, 553, 23 L. Ed. 588 (1875).

For this reason, before Plaintiff can proceed to rebut the defendants' arguments in favor of their motion to dismiss Plaintiff's complaint, it is incumbent upon Plaintiff to first point out the repeated erroneous statements of law that the defendants make regarding the Second Amendment "granting" or "conferring" upon Plaintiff the rights of keeping and bearing arms, and that these rights allegedly do not entail the right of keeping ordinary military weapons. Such statements are not only erroneous under the fundamental principles of sovereignty, sovereign power, and fundamental rights, and under the express declarations of the founding principles of this country contained within the United States Constitution, but also under the universal holdings of the Supreme Court, as well as the overwhelming majority of other courts (all those courts that in good faith correctly applied the law), on this subject, which Courts have held, from the very beginning of this country's existence to the present, "'that the Second Amendment [merely] codified a *pre-existing* right,'"[8] and as with the rest of the Bill of Rights, like Magna Charta before it, it is "but declaratories of the ancient common laws of [the realm],"[9] "confer[ring] *no new rights* on the people which did not belong to [us] before,"[10] and, therefore, "[t]he constitutional provision which we are to examine, cannot be considered as conferring either upon the Legislature, or the people any new or additional authority."[11]

"[T]h[ese] right[s], *'inestimable to freemen,'*…[are] *one of the fundamental principles, upon which rests the great fabric of civil liberty*;"[12] they are the "*palladium of the liberties of the republic*, since [they] offer[] a strong moral check against usurpation and arbitrary power of

---

[8] New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2127, 213 L. Ed. 2d 387 (2022).

[9] EDWARD COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND: CONTAINING THE EXPOSITION OF MANY ANCIENT AND OTHER STATUTES A PROEME (E. AND R. BROOKE ed., 1797).

[10] Nunn v. State, 1 Ga. 243, 249 (1846).

[11] State v. Reid, 1 Ala. 612, 616 (1840).

[12] Nunn v. State, 1 Ga. 243, 249-50 (1846) (emphasis added).

rulers; and will in general, even if these are successful in the first instance, enable the people to resist and triumph over them.'"[13]As such, at the time of the Founding and Ratification of the United States Constitution, when creating governments of "enumerated and limited powers,"[14] whose "powers over the citizen [are] strictly defined, and limited by the[ir] Constitution[s], from which [they] derive[] [their] own existence, and by virtue of which alone [they] continue[] to exist and act as… Government[s] and sovereignt[ies] [,]…*[possessing] no power of any kind beyond [said constitutions]*,"[15] by divesting themselves of their inherited joint-sovereign power only insofar as they expressly vested that power in their State and federal governments, expressly retaining all the sovereign power "not [expressly] delegated [to either governments]… *to the[mselves]*,"[16] the Founding Generation did not attempt to vest their governments with the power to act upon these absolute ancestral rights*,* but, rather, "*in express and positive terms*, *denied"* such power to their government, thereby evidencing their unequivocal intent not to vest their governments with the power to act upon these absolute ancestral rights, but, rather, their intent to *retain* said rights for "[themselves] and [their] Posterity."[17]

In much the same fashion as they have tried to warp the law, the defendants have tried to reduce Plaintiff's claims contained in his complaint to a single "as applied challenge," when, in fact, Plaintiff claims that the National Firearms Acts are unlawful and unconstitutional *as applied* to him, (Pl.'s Compl. ¶¶s 451-461); that the National Firearms Acts are *facially unconstitutional* with respect to every member of the Posterity, and anyone currently enjoying the privileges of citizenship; (Pl.'s Compl. ¶¶s 419-449); and, *thirdly*, that they are *facially* unconstitutional

---

[13] <u>Andrews v. State</u>, 50 Tenn. 165, 182–83 (1871).
[14] <u>Dred Scott v. Sandford</u>, 60 U.S. 393, 434, 15 L. Ed. 691 (1857).
[15] <u>Id</u>. at 449 (emphasis added).
[16] U.S. Const. amend. X (emphasis added).
[17] U.S. Const. Preamble.

because they are not necessary and proper, nor related in the slightest degree, to congress' commerce clause powers, insofar as they are overly-broad and regulate purely intrastate activity. (Pl.'s Compl. ¶ 34).

In addition, the defendants egregiously downplay the number of factual allegations contained within Plaintiff's pro se complaint, claiming that "Plaintiff's…complaint contains only one factual allegation relevant to his claim,"[18] which is a blatantly false statement, as Plaintiff also *averred* in his *verified* complaint that: *One*, Plaintiff possesses the absolute ancestral and constitutional rights of keeping and bearing arms. While this fact is beyond dispute, Plaintiff showed this Court, through *averments* as to his genealogical pedigree, (Ex. 1 to Pl.'s Compl.), that Plaintiff is a member of the Posterity, being a descendant of Isaac Blount and Benjamin Blount of Hencoop Swamp, members of the body politic of the Colony and State of North Carolina at the time of the Founding, and, thus, possesses these absolute rights at present, as a member of the class of rights-holders of the absolute ancestral and constitutional rights of keeping and bearing arms in this country, (Pl.'s Compl. ¶ 309), and also showed this court that Plaintiff is possessed of the ancient, absolute, ancestral rights of keeping and bearing arms *with their fullest possible scope*, as Plaintiff is descended from the class of full rights-holders at common law, "the Blount family of…Astley,…Kinlet,…[and] Sodington Hall...(Ex. 1)," (Pl.'s Compl. ¶ 314), whose rights could not and cannot be acted upon, it being beyond the sovereign power of the Sovereign Body of this country to do so, and, whose "pre-existing"[19] absolute ancestral rights of keeping and bearing arms, even if they were within the joint-sovereign powers of the Sovereign Body of this country to act upon, which they are not, were not so acted upon by

---

[18] Defs.' Br. in Supp. of Defs.' Mot. To Dismiss at 2, Blount v. United States et al. (No. 6:23-CV-3106-MDH).

[19] New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2127 (2022).

the Founding Generation, the original Sovereign Body of this country, but, rather, were expressly retained by said Founding Generation, Plaintiff's ancestors, from all legitimate action on the part of their agent, the government, and passed inviolate to Plaintiff at present by virtue of his lineal, legal, and bloodline descent from said progenitors, with at least the same scope that said rights possessed at common law. (Pl.'s Compl. ¶ 107-112; 391-398; 432; 439; 487). *Two,* Plaintiff has not deprived himself of these rights by committing any felony offenses. (Pl.'s Compl. ¶ 1).

*Three*, Plaintiff explained that these rights, being absolute rights, are bound only by nuisance doctrine, and this fact is evidenced not just by the ***universal case law,*** but also by the ***fact*** that there are ***no regulations***, extant either at common law or in this country's antebellum history, which ever attempted to regulate these absolute ancestral rights except where the ***abusive*** exercise of these rights rose to the level of a ***nuisance, averring to the absence of regulations***. (Pl.'s Compl. ¶¶s 337-354; 373-388). *Four*, because the keeping of arms alone can never amount to a nuisance, as a matter of law, Plaintiff ***averred*** in his complaint, after reading all of the regulations extant from the earliest regulation on record at common law up through 1860, that there were ***no regulations*** (save the lone Statute of King Henry VIII) which attempted or purported to regulate the class of full rights-holders in the types of arms which they were entitled to keep, because Sovereigns, legislatures, and courts understood that the class of rights-holders are entitled to keep any and all arms, but most especially ordinary military weapons. (Pl.'s Compl. ¶¶s 355-358; 373-390; 404-412; 470-472). The absence of such regulations is a ***historical fact*** extremely relevant to this case considering that it is the ***government's burden to prove that there <u>were </u>historically analogous regulations to the challenged provisions of the National Firearms Acts'***, which attempt to ***absolutely prohibit*** the law-abiding citizen members of the Posterity from keeping ordinary military weapons manufactured post-1986, ***extant during***

*the above-referenced time period*. (Pl. Compl. ¶¶s 355-358; 373-390; 404-412; 470-472). *Five*, Plaintiff averred that Plaintiff's rights of keeping and bearing arms entail the right to keep "military armes,"[20] as it was Plaintiff's ancestral duty to keep such arms under the Statutum de Militibus and American militia acts, and Plaintiff showed that *all legislatures in this country universally recognized and conceded that the class of rights-holders are entitled to keep ordinary military weapons*, and, in addition, *dangerous and unusual arms*, because *every regulation* which ever even touched on the types of arms the class of rights-holders could not *store negligently*, *bear secretly*, or give to *persons not possessed of these rights*, *expressly recognizes* that the class of rights-holders are entitled to keep, at the least, ordinary military weapons, and most recognize the right to keep dangerous and unusual weapons. (Pl.'s Comp. ¶¶s 321-327; 373-390; 413). *Six,* Plaintiff alleged that M-16 rifles, and the like, manufactured post-1986, are ordinary military weapons in ordinary use in the U.S. military, and these allegations are not disputed. (Pl.'s Compl. ¶¶s 24, 433). *Seven*, Plaintiff stated that the National Firearms Acts *absolutely prohibit* his possession of the aforementioned weapons, machine guns which are ordinary military weapons manufactured post-1986, and the defendants do not dispute this fact, nor can it be disputed. (Pl.'s Compl. ¶ 443). *Eight*, Plaintiff pointed out the indisputable fact that it is beyond the power of the government to act upon Plaintiff's absolute ancestral and constitutional rights of keeping and bearing arms. (Pl.'s Compl. ¶ 43, 158,159, 443, 461). *Nine*, Plaintiff alleged that he intends to violate said Acts' unconstitutional provisions. (Pl.'s Compl. ¶¶s 35, 47, 55, 159). *Ten*, Plaintiff cited news releases released by the BATF that show that these acts are regularly enforced all over the country and there is no reason why this Court

---

[20] EDWARD COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND: CONTAINING THE EXPOSITION OF MANY ANCIENT AND OTHER STATUTES 597 (E. AND R. BROOKE ed., 1797).

should believe that they would not be fully enforced against Plaintiff should he violate said Acts, thus showing this Court that Plaintiff's prosecution for violating said acts would be imminent, and the government defendants have **not disavowed their intent to prosecute Plaintiff under these acts should he violate them**. (Pl.'s Compl. ¶¶s 36, 438, 444). ***Lastly***, Plaintiff alleged that he would suffer irreparable harm if he violates the National Firearms Acts without first seeking a declaratory judgment from this Court as to the validity of said Acts, as the penalties for violating said Acts are severe, constituting felony offenses, and conviction for said offenses would deprive Plaintiff of not only his ancient, fundamental, ancestral rights of keeping and bearing arms, but, also, of all of his constitutional and ancestral rights. (Pl.'s Compl. ¶¶s 30, 36, 53, 444).

<u>Standard of Review</u>

"'[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence **required at the successive stages** of the litigation.'"[21] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' *National Wildlife Federation, supra,* 497 U.S., at 889, 110 S.Ct., at 3189. In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' **by affidavit or other evidence** 'specific facts,' Fed.Rule Civ.Proc. 56(e), **which** for purposes of the summary judgment motion **will be taken to be true**."[22] "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to

---

[21] <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014) (emphasis added).
[22] <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992) (emphasis added).

establish standing depends considerably upon ***whether the plaintiff is himself an object of the action (or forgone action) at issue***. ***If he is, there is ordinarily little question that the action or inaction has caused him injury***, and that a judgment preventing or requiring the action will redress it."[23]

Here, Plaintiff is the subject of the unconstitutional action, and, moreover, Plaintiff has done more than ***merely*** allege to certain facts, his complaint is ***verified***, and, thus, his factual allegations are in fact ***averments***, the same as if they had been made via ***affidavit***. Lastly, while the defendants have not made a motion for summary judgment, but, rather, a motion to dismiss, this Court is to take all of Plaintiff's factual allegations, in this case averments, as true, and to make all reasonable inferences therefrom in Plaintiff's favor.

<u>Plaintiff Has Suffered an Injury-in-Fact</u>

The defendants' argument that Plaintiff's complaint should be dismissed for lack of subject-matter jurisdiction, on the theory that Plaintiff lacks standing to bring this suit, can be summarily dismissed by this Court, as it rests on an erroneous understanding of modern-day standing doctrine. All that is required for a plaintiff to have standing is, first, "the plaintiff must have suffered an '***injury in fact***'…Second, there must be a ***causal connection*** between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and…Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be '***redressed*** by a favorable decision.'"[24] Here, the Plaintiff properly alleged facts sufficient to satisfy all three requirements necessary to show standing.

---

[23] <u>Id</u>. at 561–62 (emphasis added).
[24] <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (emphasis added).

Ultimately, the defendants' argument can be boiled down to: until Plaintiff ***actually violates*** the National Firearms Acts, or publicly admits, in federal court pleadings, to having violated the National Firearms Acts, thus subjecting himself to criminal prosecution, Plaintiff lacks standing to challenge the validity of said Acts because he has not suffered an injury-in-fact. That is not the law, "[n]othing in [the Supreme] Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law."[25] Indeed, such a requirement would most likely be an unconstitutional infringement of Plaintiff's Fifth Amendment right against self-incrimination. And, thus, it appears that the government defendants are not just interested in depriving Plaintiff of his absolute ancestral and constitutional rights of keeping and bearing arms, but also of other of his ancestral and constitutional rights. *Sic semper tyrannis*!

The correct analysis, as explained by the Supreme Court in <u>Susan B. Anthony</u>, for a court to employ when determining whether or not a plaintiff has alleged facts sufficient to show that he has suffered an injury-in-fact in a pre-enforcement action is for the court to determine whether the plaintiff has, first, "alleged 'an ***intention*** to engage in a course of conduct arguably affected with a constitutional interest;'"[26] second, alleged that the intended course of conduct is "'proscribed by [the] statute' they wish to challenge;"[27] and, third, has alleged that the "the ***threat*** of future enforcement of the…statute is [credible or] substantial."[28]

In this case, there can be no dispute that Plaintiff intends to engage in a course of conduct

---

[25] <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 163, 134 S. Ct. 2334, 2345, 189 L. Ed. 2d 246 (2014).

[26] <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 161, 134 S. Ct. 2334, 2343, 189 L. Ed. 2d 246 (2014) (emphasis added).

[27] <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 162, 134 S. Ct. 2334, 2344, 189 L. Ed. 2d 246 (2014).

[28] <u>Id</u>. at 164 (emphasis added).

arguably affected with a constitutional interest, as Plaintiff intends to legally and lawfully possess machine guns manufactured post-1986, to wit, ordinary military weapons in regular use in the United States military, an act falling squarely within the scope of his absolute ancestral and constitutional rights of keeping and bearing arms. (Pl.'s Compl. ¶¶s 35, 47, 55, 159). Nor is there any dispute as to the fact that Plaintiff's planned course of conduct is proscribed by the challenged provisions of the National Firearms Acts, thus, defendants' challenge to Plaintiff's standing is couched solely on the credibility of the threat of prosecution, and Plaintiff will focus solely on the Supreme Court's analysis as to what makes a threat of prosecution credible in the pre-enforcement context.

In Susan B. Anthony, the Supreme Court detailed that three factors are relevant for determining whether a plaintiff has shown a credible threat of prosecution under a challenged law. First, the plaintiff must allege or show "a history of past enforcement."[29] The second factor to be considered is the "rar[ity]" of prosecutions under the challenged law."[30] And, third, the court should take into account whether or not the government defendants have "disavowed enforcement [of the challenged law] if petitioners" proceed with their planned course of conduct.[31]

Here, Plaintiff alleged in his complaint and showed this court, citing the BATF's own press releases, that the challenged provisions of the National Firearms Acts have been regularly enforced against United States citizens. (Pl.'s Compl. ¶¶s 36, 438, 444). The frequency of prosecutions under said Acts cannot be reasonably denied. Lastly, the government defendants have not disavowed enforcement of the challenged provisions of the National Firearms Acts if

---

[29] Id.
[30] Id. at 165.
[31] Id.

Plaintiff pursues his ***intended*** course of conduct. "On these facts, the prospect of future enforcement is far from 'imaginary or speculative,'"[32] it is a credible threat of prosecution and, upon conviction for a violation of the challenged provisions of the National Firearms Acts, Plaintiff would ***suffer severe penalties***, including substantial prison time and a complete deprivation of all of his ancestral and constitutional rights. (Pl.'s Compl. ¶ 53).

Indeed, as the Supreme Court explains, in pre-enforcement challenges to unconstitutional laws, the injury-in-fact is ***not*** the prosecution or enforcement of unconstitutional laws against rights-holders, but, rather, the ***threat*** of prosecution and that ***threat's deterrent effect on the lawful exercise of Plaintiff's rights***. And where, as here, that threat is one of ***criminal prosecution***, which carries with it any amount of jail time (in <u>Susan B. Anthony</u>, it was a mere misdemeanor offense), much less ***substantial*** prison time and a ***complete deprivation of constitutional rights***, as is imposed for violations of the challenged provisions of the National Firearms Acts, that threat, even if remote, is sufficient to satisfy the injury-in-fact requirement of standing. Even so, in this case, the threat is not remote as Plaintiff has shown, and the defendants do not deny, that these provisions would be enforced against Plaintiff should he continue with his intended course of conduct.

Thus, in <u>Susan B. Anthony</u>, the Supreme Court held that COAST, one of the plaintiffs in that case, had suffered an injury-in-fact sufficient for standing even though COAST had refrained from violating the challenged statute, holding, that "[w]hen an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. See *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ('***[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution***

---

[32] <u>Id</u>.

*to be entitled to challenge a statute that he claims <u>deters the exercise of his constitutional rights.</u>*')"[33]

Under modern-day standing doctrine, the injury is the unlawful coercion exerted upon the plaintiff in an attempt to discourage him from lawfully exercising his constitutional rights, by way of severe penalties for any infraction of the unconstitutional law. It is clear that this sort of unlawful coercion, which the Supreme Court held sufficient to constitute an injury-in-fact under standing doctrine, has been successful in preventing challenges to the National Firearms Acts, as no law-abiding citizen has had the resolute courage to gain standing to challenge these unconstitutional acts by intentionally violating said acts, as the penalties for violation are severe. Even so, Plaintiff has shown this court that the threat of prosecution under these Acts is real and would be imminent should Plaintiff violate said Acts by pursuing Plaintiff's planned course of conduct.

Lastly, Plaintiff claims that his rights of keeping and bearing arms have, in fact, been infringed and his exercise of his lawful rights chilled by the very fact that the United States government has unlawfully and unconstitutionally attempted to ***absolutely prohibit*** his possession of ordinary military weapons manufactured post-1986 and in regular use in the United States military. In the State in which Plaintiff lives, the state legislature has properly respected Plaintiff's absolute ancestral and constitutional rights of keeping and bearing arms, and has ***recognized and conceded*** that Plaintiff is entitled, in connection with said rights, to keep ***any types of weapons whatsoever***. Thus, if it were not for the ***illegal and unconstitutional National Firearms Acts***, Plaintiff would be possessed of machine guns manufactured post-1986, to wit, ordinary military weapons at present.

---

[33] <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158–59, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014) (emphasis added).

<u>Plaintiff Has Stated A Claim Upon Which Relief Can Be Granted</u>

The defendants' claim that Plaintiff has failed to state a claim upon which relief can be granted is also meritless. Their contention is based upon an erroneous understanding as to what is required to state a claim upon which relief can be granted, erroneous **_non-relevant_ _case law_**, and an erroneous misconception as to who bears the burden the burden of proof and how that burden is satisfied.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."[34] A complaint "does not need detailed factual allegations," merely enough factual allegations "to raise a right to relief above the speculative level."[35] "In applying these general standards to a…claim, [a Court should simply review the Plaintiff's] complaint [to see if it contains]…enough factual matter (taken as true)"[36] to state a plausible claim for relief. In this case, Plaintiff has exceeded this minimal pleading standard, alleging, nay averring, more than enough facts to state a claim upon which relief can be granted.

The elements to Plaintiff's constitutional tort claim are: **one**, that Plaintiff possesses the absolute ancestral and constitutional rights of keeping and bearing arms. **Two**, that Plaintiff's ancient, absolute, ancestral and constitutional rights of keeping and bearing arms entail the right to keep "military armes."[37] **Three**, that the government does not have the power to act upon these

---

[34] <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007).
[35] <u>Id</u>.
[36] <u>Id</u>. at 556.
[37] EDWARD COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND: CONTAINING THE EXPOSITION OF MANY ANCIENT AND OTHER STATUTES 597 (E. AND R. BROOKE ed., 1797).

absolute ancestral and constitutional rights. *Four*, that the government has transgressed the bounds of its limited and enumerated power by enacting and enforcing the challenged provisions of the National Firearms Acts, thereby acting upon said rights. *Five*, that Plaintiff has been injured thereby because his absolute ancestral and constitutional rights of keeping and bearing arms have been infringed and his lawful exercise of said rights deterred. Plaintiff properly alleged and averred facts sufficient to support every element of his claim, as is shown in the introduction section to this brief, in addition to including a detailed recitation of the ***universal case law***, ***from the time of the Founding up until and including <u>Miller</u>***, respecting the class of protected arms under these absolute rights, which held, at a minimum, that these rights entail the right to keep and bear military-grade ordinary military weapons.

The government defendants have ***<u>not</u>*** controverted any of these factual averments and allegations, because they cannot. If this Court assumes that all of these factual allegations and averments are true, as it is bound to do at this stage of these proceedings, ***including the fact that there were <u>no historical regulations</u>, extant from the earliest days of the common law up until the year 1860, which ever attempted or purported to regulate the class of rights-holders in our keeping of military-grade ordinary military weapons***, because the keeping of such arms has always been understood as ***falling within the scope of these rights,*** and, thus, ***no historically analogous regulations, extant at or near the time of the Founding, and widely accepted as lawful,*** to the National Firearms Acts' absolute prohibition as to the Posterity's keeping of machine guns manufactured post-1986 and in regular use in the United States military, this Court must deny the defendants' motion to dismiss for failure to state a claim because it cannot be said that Plaintiff failed to allege facts sufficient to support his claim.

This is especially so, considering the fact that it is the ***government's burden*** to come forward with ***evidence*** of ***historically analogous regulations*** which prove that the keeping of "military armes"[38] is outside the scope of Plaintiff's absolute rights of keeping and bearing arms. <u>The government defendants have **failed** to satisfy this burden</u>, because they cannot satisfy this burden, and have, rather, attempted to place the burden on Plaintiff by citing ***<u>non-relevant modern case law,</u>*** which erroneously and unlawfully attempts to unconstitutionally restrict the class of protected arms under these rights. Indeed, the government defendants have ***proffered <u>no relevant evidence in this case</u>***. The case law cited by defendants is ***not from the relevant time period***, and, as detailed in Plaintiff's pro se complaint, it has been the ***universal understanding*** of ***all*** the courts of this country, ***from the time of the Founding up to and including the United States Supreme Court in <u>Miller</u>***, and all of the pre-Foundation common law courts, that the absolute ancestral and constitutional rights of keeping and bearing arms, as held by the class of rights-holders, entail, at the very least, the right to keep military-grade ordinary military weapons. <u>This **fact** has not been controverted by the defendants</u>. The Supreme Court held as much in <u>Miller</u>, when it only overturned the dismissal of the defendants' case under a prosecution under the National Firearms Act, because it was not within the Court's "judicial notice that [sawed-off shotguns] [were] ***any part of the ordinary military equipment*** or that [their] use could contribute to the common defense,"[39] at that time.

The Supreme Court's espousal of the "common use" restriction on the class of protected arms in <u>Heller</u> was blatantly erroneous, and, in fact, all of the case law which the Court cited for

---

[38] EDWARD COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND: CONTAINING THE EXPOSITION OF MANY ANCIENT AND OTHER STATUTES 597 (E. AND R. BROOKE ed., 1797).
[39] <u>United States v. Miller</u>, 307 U.S. 174, 178, 59 S. Ct. 816, 818, 83 L. Ed. 1206 (1939) (emphasis added).

the proposition that the ***mere*** keeping or the ***mere*** bearing of dangerous and unusual weapons is somehow a ***per se abuse*** of one's rights rising to the level of a ***per se nuisance,*** and, therefore, ***per se*** outside the scope of these absolute rights, holds to the contrary. *See* O'Neill v. State, 16 Ala. 65, 67 (1849); State v. Langford, 10 N.C. 381, 382-3 (1824); Eng. v. State, 35 Tex. 473, 476 (1872); State v. Lanier, 71 N.C. 288, 289 (1874). Furthermore, there is ***no pre-20th century American*** case law, nor pre-Foundation English case law, which holds that ordinary military weapons can ever be considered dangerous and unusual weapons. Indeed, all of the case law holds that ordinary military weapons are ***per se <u>not</u> dangerous and unusual, and that the keeping of such arms <u>can never</u> fall outside the scope of these absolute ancestral and constitutional rights***.

As Bruen makes clear, to the extent that ***any governmental action*** acts upon or restricts the exercise of these absolute rights in the slightest degree, from their scope at the time of the Founding, such action is ***unlawful***. Thus, to the extent that the "common use" restriction on the class of protected arms espoused in Heller ***is unsupported by the historical record***, to wit, the colonial and antebellum American regulatory history and pre-Foundation English regulatory history, as well as the ***universal pre-20th century case law*** as to the class of protected arms, and the understandings of the foremost jurists at common law and in this country (Coke, Hawkins, St. George Tucker) as to the scope of these absolute ancestral rights, ***it must be understood as being overruled by the Supreme Court's subsequent holding in Bruen***, as it is, itself, an unconstitutional infringement of these absolute ancestral rights by unconstitutionally restricting the class of protected arms under these rights. Because the powers of government cannot be expanded, ***not even by the third branch***, such a restriction is an unlawful and unconstitutional regulation as to these rights, and ***the government bears the burden***, as it does with all regulations

respecting these rights, ***to prove that such a regulation does not act upon conduct falling within the scope of these rights***, but, rather, only upon conduct falling outside the scope of these rights. The government can only satisfy this burden ***by pointing to <u>historically analogous regulations extant at or near the time of the Founding, and widely accepted as lawful,</u>*** to show that the Founding Generation understood the keeping of ordinary military weapons as amounting to an ***abusive exercise*** of these rights rising to the level of a ***nuisance***. *See* <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 142 S. Ct. 2111, 2154–55, 213 L. Ed. 2d 387 (2022).

But, there were ***no such regulations,*** because no one at or near the time of the Founding, nor from the very beginning of the common law to the time of the American Civil War, ever understood the keeping of ordinary military weapons as falling outside the scope of these rights. To the contrary, because ***every King, parliament, and colonial and antebellum American legislature, universally understood, as did their courts,*** that these rights, being absolute rights, are limited only by ***nuisance doctrine,*** "[*t*]*he principle on which all right to regulate the use in public of these articles of property, is, that no man can so use his own as to violate the rights of others*, or of the community of which he is a member,"[40] as no man is within his rights, not even his fundamental rights, to use his own so as to infringe the rights of others, ***they universally understood that they could not regulate the class of rights-holders in our keeping of any types of arms,*** because the ***mere*** keeping of arms alone, any types of arms, without more, can ***never*** amount to a nuisance, and, thus, from the earliest days of the common law up until the American Civil War there were absolutely ***no regulations*** respecting the types of arms which the class of rights-holders were entitled to keep, save the lone Statute of King Henry VIII, which ***recognized and conceded*** that ***all*** free Englishmen are entitled to keep and ***bear*** both ordinary military

---

[40] <u>Andrews v. State</u>, 50 Tenn. 165, 185 (1871) (emphasis added).

weapons and any dangerous and unusual weapon which can be put to any lawful use, as it has been universally understood that the mere keeping of any types of arms, both dangerous and unusual arms and ordinary military weapons, ***but most especially ordinary military weapons***, can never amount to an ***abuse*** of one's absolute rights rising to the level of a nuisance, and, thus, can never amount to conduct falling outside the scope of these rights.

So, while the Supreme Court did not abrogate Heller's analysis as to ***the standard of scrutiny to be applied*** when assessing the constitutionality of governmental action with respect to these rights, to wit, ***absolute scrutiny***, since the government has no power and could have no power to act upon said rights, and the Court reaffirmed that ***relevant common law and Foundation-era history and case law*** is the means by which the scope of these rights are to be determined, to the extent that Heller itself is an unconstitutional restriction on the scope of these rights by attempting to restrict the class of protected arms under these rights, Heller's "common use" restriction must be understood as being overruled by the Supreme Court's subsequent holding in Bruen.

Importantly, while the defendants do attempt to misdirect this Court's attention to ***modern cases***, which erroneously and unlawfully attempt to unconstitutionally restrict which types of arms are "protected" "under the Second Amendment," such cases are ***irrelevant*** to this case as they are ***not*** from the ***relevant historical time period***. As such, the government defendants have ***failed to carry <u>their burden</u> to prove, by pointing to 19th century, common law, or Foundation-era case law, or historical regulations, extant at or near the time of the Founding and widely accepted as lawful, that Plaintiff's absolute ancestral and constitutional rights of keeping and bearing arms do not entail the right to keep and bear machine guns, to wit, ordinary military weapons, nor can they bear this burden by pointing to any historical***

***regulations to support their proposition because there were <u>no historical regulations</u>, extant at***
***or near the time of the Founding, nor from the earliest days of the common law up until the***
***American Civil War, which prove that anyone ever considered the keeping of ordinary military***
***weapons as amounting to an abuse of one's rights of keeping and bearing arms rising to the***
***level of a nuisance, and, thus, falling outside the scope of these rights.*** This is because the ***mere***
keeping of ordinary military weapons has always been understood as constituting ***<u>no nuisance</u>***
***<u>per se</u>***, and, therefore, as amounting to conduct falling squarely within the scope of these rights.

As the Supreme Court makes ***exceedingly clear*** in <u>Bruen</u>, to the extent that modern

regulations ***and case law*** are ***inconsistent*** with the Founding Generation's understanding as to

the scope of these absolute ancestral and constitutional rights, those regulations ***and case law*** are

***unconstitutional***. *See* <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 142 S. Ct. 2111, 2127-

40, 213 L. Ed. 2d 387 (2022)*.*

<u>CONCLUSION</u>

Because Plaintiff has standing to challenge the unlawful and unconstitutional National

Firearms Acts, alleged and averred facts sufficient to establish standing in his complaint, and

alleged and averred facts sufficient to state a claim upon which relief can be granted, and

because the ***government defendants have failed to carry their evidentiary burden***, this Court

should DENY the defendants' motion to dismiss.

WHEREFORE, Plaintiff prays that this Court:

    1.  Set a time for a hearing on Defendants' Motion to Dismiss; and,
    2.  Deny Defendants' Motion to Dismiss.

Respectfully submitted this 15th day of August, 2023.

                    /s/ Mark J. Blount_____
                    Mark Jerome Johnson Blount, Esquire

Juris Doctor, 2020, Duke University School of Law
Georgia Bar Member Number: 539062
Missouri Bar Member Number: 75092
Tennessee Bar Member Number: 040678
*Pro Se*

Mark J.J. Blount, Esq.
664 N Montego St.,
Nixa, MO 65714
markblountesquire@gmail.com
(478) 232-2167

## CERTIFICATE OF SERVICE

     I hereby certify that on August 15, 2023, I electronically filed the foregoing Suggestions in Opposition to Defendants' Motion to Dismiss with the Clerk of Court using the CM/EMF system and that I have mailed by United States Postal Service the foregoing to the following:

Defendant Garland, in his individual capacity at:

Attn: Merrick Garland, Att. Gen. U.S.
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Defendant Hansen, in his individual capacity at:

ATTN: Agent Hansen
1251 NW Briarcliff Pkwy, Suite 600
Kansas City, MO 64116

/s/ Mark J. Blount_____
Mark Jerome Johnson Blount, Esquire
Juris Doctor, 2020, Duke University School of Law
Georgia Bar Member Number: 539062
Missouri Bar Member Number: 75092
Tennessee Bar Member Number: 040678
*Pro Se*
664 N Montego St.,
Nixa, MO 65714
markblountesquire@gmail.com
(478) 232-2167

Date: 08/15/2023